BOOTH, Judge.
This cause is before us on petition for review of final agency action by order dated November 22, 1977, upholding the validity of an assessment by Department of Revenue [DOR] of sales tax, interest and penalties against Lawrence Nali Construction Company [Nali], petitioner herein.
Respondent DOR conducted an audit of transactions involving petitioner Nali for the period November 1, 1972, through October 31, 1975, and as a result thereof claims a balance due of $17,383.58 in taxes, interest and penalties. All transactions involved sales by Nali of asphaltic concrete to political subdivisions of the State, governmental entities that are exempt from payment of sales tax under Florida Statute § 212.08(6):
“There shall also be exempt from the tax imposed by this chapter sales made to . the state, or any county, municipality or political subdivision of this state; provided this exemption shall not include sales of tangible property made to contractors employed either directly or as agents of any such government or political subdivision thereof when such tangible personal property goes into or becomes a part of public works owned by such government or political subdivision thereof ...”
*28 The DOR contends that under the proviso of the foregoing statute and Rule 12A-1.51 F.A.C., Nali must pay sales tax on the as-phaltic concrete that Nali manufactured, delivered and installed on real property of political subdivisions of the State. Rule 12A-1.51, F.A.C. is in pertinent part as follows:
“12A — 1.51 Sales to or by contractors who repair, alter, improve and construct real property.
(1) The method by which contractors or subcontractors arrive at the total contract price charged for repair, alteration, improvement and construction of real property or for a combination of work on both real and personal property must be determined for the purpose of ascertaining whether the receipts from sales made to or by them are taxable.
(2) Such contractors may include, among others, building, electrical, plumbing, heating, painting, decorating, ventilating, paper hanging, sheet metal, bridge, road, landscape or roofing contractors and they may use one of the following methods in arriving at the total contract price:
(a) Contracts in which the contractor or subcontractor agrees to furnish materials and supplies and necessary services for a lump sum;

(d) Contracts in which the contractor or subcontractor repairs, alters, improves or constructs real property and wherein he agrees to sell specifically described and itemized materials and supplies at an agreed price or at the regular retail price and to complete the work either for an additional agreed price or on the basis of time consumed.
When a contractor or subcontractor uses materials and supplies in fulfilling either a lump sum, cost plus, fixed fee, guaranteed price of any kind of contract except one falling in class (d) above, he becomes the ultimate consumer thereof.
The person or dealer who sells such materials and supplies to such contractor or subcontractor is making sales at retail and is required to collect the tax from him based upon the receipts from such sales.
In cases falling in class (d) above, the contractor or subcontractor is deemed to be selling tangible personal property at an agreed retail price and shall collect tax from his purchaser based upon the amount of the receipts from such sales, excluding installation charges if separately stated. A dealer selling to such contractor or subcontractor must obtain a resale certificate in lieu of tax.”
Nali contends that its transactions are covered by (d), supra, of the above-quoted rule and thus are not taxable to Nali. The DOR contends that the transactions in question are “lump sum contracts” under (a), supra, making the tax due from Nali and rendering inapplicable the exemption of § 212.-08(6).
The hearing examiner’s recommended order, adopted by DOR, upheld the assessment stating:
“The effect of the above portions of the rule [Rule 12A-1.51] is that if a lump-sum contract is involved, the contractor rather than the property owner is deemed to be the end consumer because he agrees to provide the owner with altered or improved realty and it is this finished product that is being purchased. In such cases, tangible property purchased or manufactured by the contractor and incorporated in the project is consumed by the contractor for its own purpose in providing a final product of improved realty and the contractor is liable for the sales tax. Subparagraph 2(d), on the other hand, provides that if a contractor ‘breaks out’ the price for materials or supplies used and itemizes separately his service or installation charges, he is deemed to be a retailer. In such cases, the owner of the property is considered to be the end consumer or final retail purchaser and thus liable for the sales tax. In this case, it is clear that the political subdivisions contracted for an improvement to realty in the form of asphalt surfaces on roads. The contractual documents show that lump-sum contracts *29 were utilized with no separate itemization of the materials, i. e., asphaltic concrete, used on the various contracts. Thus, the case falls within the purview of Rule 12A-1.51(2)(a) and petitioner is considered to be the ultimate consumer of the materials and supplies used in fulfilling the contracts. He is thus liable for the asserted sales tax thereon. . . . ”
******
It is true that if subparagraph (2)(d) of Rule 12A-1.51 were applicable, the transactions in question would be exempt from tax under the provisions of subsection 212.08(6), Florida Statutes, which exempts sales of tangible personal property to political subdivisions of the state. The exemption, however, does not apply in cases of ‘sales of tangible personal property made to contractors . . . when such tangible personal property goes into or becomes a part of public works owned by such government or political subdivision thereof . . . .’ Since it has been determined above that the sales in this case were, in effect, made to the contractor under Rule 12A-1.51(2)(a), the exemption does not apply.”
Evidence adduced at the hearing was that since 1960 Nali has been bidding on, and selling, asphalt concrete to the State and its subdivisions under substantially the same arrangements as the DOR now, for the first time, seeks to tax. In 1967 DOR conducted an audit of Nali, but did not seek to tax similar sales to governmental entities of asphaltic concrete. The record before us does not establish whether DOR’s failure to claim these transactions as taxable after the 1967 audit was (1) due to DOR negligent oversight, or (2) the result of a then-existing agency policy which has since been changed. We agree with DOR that estoppel cannot be based on the omission, through oversight, to tax an otherwise taxable transaction. A more difficult question, the invalidity of a back assessment of taxes, interest and penalties following a change of agency policy without change in statute or rules governing taxability, is not before us.
Testimony at the hearing was that asphalt meeting the specifications of a particular governmental entity belongs to the purchaser “when it falls in that truck at the plant.” Switching of loads from one purchaser to another, for instance from a county to a city project, after loading at the plant was done only with express permission of the owner of the load and required a “change in the ticket”, the original of which accompanied the load. The testimony is consistent with the contractual arrangement between the parties and with the passing of title to the personalty at Nali’s plant. If the purchasers here were not tax-exempt governmental entities, they would be liable for sales tax. The inability of DOR to impose sales tax on purchases by governmental entities is not a valid basis in itself for imposition of tax on the private industry manufacturing and selling the property purchased.
In the proceeding below, Nali challenged the constitutionality of both the statute and the rule, but subsequently agreed to withdraw that challenge and withhold it for judicial determination. The hearing officer was of the view that he was without authority to.rule on the constitutional question and expressly reserved that question for the appropriate judicial forum. Although this Court is an appropriate judicial forum for determination of the constitutionality of the statute and rule, we find it unnecessary to reach those questions and therefore decline to do so.
The theoretical basis for the taxation under Chapter 212 of Nali on its sales to governmental entities is that Nali fabricates asphalt for its own use in performance of a contract and therefore is subject to a use tax. Under this theory the tax exempt status of the governmental entity as purchaser is not involved. The theory is untenable under the facts of record here, however. First, the call for bids in each instance of record is for “ASPHALTIC CONCRETE.” That is the product bid on, and purchased by, the governmental entity. Likewise the bid specifications deal with the quality and composition of the asphaltic concrete purchased. Neither the call for *30 bids nor the specifications are for a projected improvement to realty but are clearly for the material itself, i. e., asphaltic concrete.
Turning now to the bid itself, the format is prescribed in each instance by the governmental entity and it is mandatory that the prescribed form be used. The bid form-, at requires that the bidder set out its bid in three distinct ways[1], giving the purchaser the option as to the alternative selected: (1) Asphaltic concrete F.O.B. (at the plant); (2) Asphaltic concrete placed by the vendor and (3) Asphaltic concrete delivered and placed by the vendor. Delivery charges are separately stated on a per-mile basis, so it is only as to placement service that DOR contends the “lumping” occurred.
Nali correctly points out that the contract in this case is the bid itself. The separate invoices are indicia of performance and not a series of separate contracts. All invoices are referable to the contract itself which clearly states the amount charged for as-phaltic concrete F.O.B. The value of services performed is readily apparent in each instance. There is no contention that the bid price of asphalt is other than the correct and constant price regardless of incidental service options selected by the purchaser. Indeed, no contention is made by DOR that the total value of services, if any, performed is not simply the difference between (1) the bid price of asphaltic concrete F.O.B. and (2) the invoice price. We hold, therefore, that the contract here is not a lump sum contract as defined by Rule 12A-1.51, and under § 212.08(6) the transactions in question are not validly subject to tax.
Accordingly, the order below is REVERSED.
BOYER, Acting C. J., and SMITH, J., concur.

. Example of Bid Specification Format:
“SPECIFICATIONS FOR ASPHALTIC CONCRETE
# 2 Asphaltic Concrete
Type II Modified 1800# or equal Price Per Ton
A. F.O.B. $8.45
B. County Delivered Vendor Placed 9.35
C. Vendor Delivered & Placed 9.35_
PLUS 8<t per ton per mile”